GREGORY P. STONE (State Bar No. 78329)
Gregory.Stone@mto.com
PETER E. GRATZINGER (State Bar No. 228764)
Peter.Gratzinger@mto.com
ADAM R. LAWTON (State Bar No. 252546)
Adam.Lawton@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendant
NANOSOLAR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SOLANNEX, INC.,<br><br>                  Plaintiff,<br><br>        v.<br><br>NANOSOLAR, INC.,<br><br>                  Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 4:11-cv-547-YGR<br><br>**NANOSOLAR, INC.'S MOTION TO STAY CASE PENDING REEXAMINATION OF THE ASSERTED PATENTS BY THE U.S. PATENT AND TRADEMARK OFFICE**<br><br>Hearing Date:   March 13, 2012<br>Time:                  2:00 P.M.<br>Judge:                Hon. Yvonne Gonzalez Rogers<br>Courtroom:       To Be Assigned |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 2

    A. The Parties.............................................................................................................. 2

    B. Procedural History ................................................................................................. 3

    C. Overview of *Ex Parte* Reexamination Procedure .................................................. 5

III. ARGUMENT ....................................................................................................................... 5

    A. Neither a Trial Date Nor Other Case Management Deadlines Have Been Set, and Only Limited Discovery Has Occurred........................................................ 5

    B. A Stay Is Likely to Simplify the Issues in This Case.............................................. 7

    C. A Stay Would Not Unduly Prejudice or Tactically Disadvantage Solannex.......... 8

IV. CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ASCII Corp. v. STD Entertainment USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994) .................................................................................. 2, 6

*AT&T Intellectual Property I v. Tivo, Inc.*,
774 F. Supp. 2d 1049 (N.D. Cal. 2011) ............................................................................ *passim*

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-cv-2863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ...................................... 7

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .................................................................................................................. 9

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
2009 WL 3078463 (N.D. Cal. Sept. 28, 2009) ........................................................................ 8

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ................................................................................................ 2

*Generac Power Systems Inc. v. Kohler Co.*,
--- F. Supp. 2d ----, 2011 WL 2648596 (E.D. Wis. July 5, 2011) ...................................... 8, 10

*Hynix Semiconductor Inc. v. Rambus Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ..................................................................................... 9

*Implicit Networks Inc. v. Advanced Micro Devices, Inc.*,
No. C 08-184 JLR, 2009 WL 357902 (W.D. Wash. Feb. 9, 2009) ........................................ 10

*Orinda Intellectual Properties USA Holding Group, Inc. v. Sony Electronics Corp.*,
No. C 09-4920 EDL, 2010 WL 3184375 (N.D. Cal. Aug. 11, 2010) ....................................... 8

*Pragmatus AV, LLC v. Facebook, Inc.*,
No. 11-CV-2168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011) ........................... *passim*

*Softview Computer Products Corp. v. Haworth, Inc.*,
No. 97 Civ. 8815, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ............................................ 8

*Solannex, Inc. v. MiaSolé*,
No. 11-cv-171-PSG (N.D. Cal.) ............................................................................................... 3

*Target Therapeutics, Inc. v. SciMed Life Systems, Inc.*,
33 U.S.P.Q.2d 2022, 1995 WL 20470 (N.D. Cal. 1995) .......................................................... 6

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ................................................................................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*z4 Technologies, Inc. v. Microsoft Corp.*,
  434 F. Supp. 2d 437 (E.D. Tex. 2006) .................................................................................... 9

**FEDERAL STATUTES**

35 U.S.C. § 284 .............................................................................................................................. 3

35 U.S.C. § 303(a) ......................................................................................................................... 5

**OTHER AUTHORITIES**

Keith Bradsher, *China Benefits as U.S. Solar Industry Withers,* N.Y. Times, Sept. 2, 2011,
  *available at* http://www.nytimes.com/2011/09/02/business/global/us-solar-company-
  bankruptcies-a-boon-for-china.html ..................................................................................... 3

*Manual of Patent Examination Procedure* § 2261, *available at*
  www.uspto.gov/web/offices/pac/mpep/index.htm ................................................................ 5

**NOTICE OF MOTION AND MOTION татTO STAY**

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on March 13, 2012, at 2:00 P.M. or as soon thereafter as the matter may be heard, before the Honorable Yvonne Gonzalez Rogers, of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Defendant Nanosolar, Inc. ("Nanosolar") will and does hereby move for an order staying all discovery and all further proceedings in this case pending the outcome of requests for reexamination filed with the United States Patent and Trademark Office asking that the claims of the three patents asserted in this litigation be reexamined.

This motion is made pursuant to the Court's inherent authority to control the proceedings before it, on the grounds that judicial efficiency favors that the case be stayed pending the resolution of the requests for reexamination so that the validity of the patents in suit can be determined, in the first instance, by the Patent and Trademark Office, which has specialized expertise regarding these very issues. This motion is based upon the attached Memorandum of Points and Authorities; the Declarations of Peter E. Gratzinger and John McAdoo filed concurrently herewith; all the records, documents, pleadings, and papers on file or to be filed in this action; arguments of counsel; and any other matters that may properly come before the Court for its consideration.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Nanosolar has been accused by Solannex, Inc. ("Solannex") of infringing 55 claims in three patents. However, these three patents should never have been issued by the United States Patent and Trademark Office (the "PTO") because, among other things, an earlier published Japanese patent application, which the PTO was not aware of when it allowed the Solannex patents to issue, anticipates and invalidates all of the asserted claims. Nanosolar has filed an administrative proceeding with the PTO, called an *ex parte* reexamination request, asking the PTO to take a second look at the Solannex patents in light of this new prior art. The requests include hundreds of pages of charts and analysis explaining to the PTO why the patents should

- 1 -

1  never have issued.  Gratzinger Decl. ¶ 2.  Nanosolar believes that, once the PTO has an

2  opportunity to review the earlier published Japanese patent application, it will conclude that it

3  should not have issued the three patents involved in this suit.

4          When reexamination has been requested of patents that are the subject of litigation,

5  a district court has the discretion to defer to the PTO in the first instance and stay the judicial

6  proceedings.  *See AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1051 (N.D. Cal.

7  2011) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  Indeed, there is a

8  "liberal policy in favor of granting" such stay motions.  *Id.* at 1052 (quoting *ASCII Corp. v. STD*

9  *Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)).

10         Courts consider three factors in determining whether to grant a motion to stay

11 pending reexamination: "(1) whether discovery is complete and whether a trial date has been set;

12 (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay

13 would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Id.* at

14 1051.  As set forth in this motion, all three factors weigh in favor of staying this case.  *First*,

15 discovery has scarcely begun, and no trial date has been set.  *Second*, granting a stay is extremely

16 likely to simplify the issues in the case because Nanosolar has sought reexamination of all 55

17 asserted claims of all three asserted patents.  *Third*, there is no tactical disadvantage or other

18 prejudice to Solannex, which does not make any product that competes with the accused product

19 (or, to Nanosolar's knowledge, any product at all).

20 **II.     BACKGROUND**

21     **A.     The Parties**

22         Nanosolar is a privately held manufacturer of solar panels based in San Jose,

23 California.  Nanosolar manufactures solar cells at its San Jose facility, and it assembles the cells

24 into solar panels at its facility outside Berlin, Germany.  The solar cells made in San Jose are thin,

25 flexible semiconductor devices that are approximately six-inch-by-six-inch squares.  The solar

26 panels are approximately two square meters and consist of an array of electrically connected solar

27 cells sandwiched between two glass panels.

28

Nanosolar has invested heavily in developing cutting-edge technologies for high-efficiency, low-cost solar cells. Nanosolar is an early-stage company in a highly competitive industry.[1] As detailed in the accompanying declaration from Nanosolar's CFO, John McAdoo, Nanosolar is essentially a development-stage company. McAdoo Decl. ¶¶ 2-3 (filed under seal). Based on Nanosolar's limited sales to date, Solannex's potential recovery in this case is likely to be less than the cost of litigation.

Solannex, to Nanosolar's knowledge, does not make or sell any products. Instead, the business of Solannex appears to be litigation and hoped-for patent licensing. In addition to this litigation, Solannex is engaged in an ongoing patent lawsuit against solar manufacturer MiaSolé, also in the Northern District of California. *See Solannex, Inc. v. MiaSolé*, No. 11-cv-171-PSG (N.D. Cal.). Solannex has never successfully licensed the patents in suit to anyone. Gratzinger Decl. Ex. A, at 6 (Solannex Response to Interrogatory No. 5). Because of its status as a "non-practicing entity," i.e., a patent owner that does not actually use the patented invention, Solannex is not seeking lost profits or other actual damages. *See id.* at 5 (Solannex Response to Interrogatory No. 3). Instead, Solannex is seeking "reasonable royalty" damages, which are the minimum damages required by statute for a prevailing patent owner. *See* 35 U.S.C. § 284 (patent damages are to be "adequate to compensate for the infringement but in no event less than a reasonable royalty").

**B.     Procedural History**

Solannex filed a Complaint on February 4, 2011, alleging infringement of U.S. Patent No. 7,732,243 (the "'243 patent"). Dkt. no. 1. Solannex subsequently amended its Complaint twice to add two more patents: U.S. Patent No. 7,898,053 (the "'053 patent") and U.S. Patent No. 7,898,054 (the "'054 patent"). Dkt. nos. 13, 25. The Second Amended Complaint asserts infringement of claims 1-9, 12-13, and 15-20 of the '243 patent; claims 1-6, 8-10, and 12-

---

[1] Over the past year, numerous U.S.-based solar panel manufacturers have filed for bankruptcy. *See, e.g.*, Keith Bradsher, *China Benefits as U.S. Solar Industry Withers,* N.Y. Times, Sept. 2, 2011, at B1, *available at* www.nytimes.com/2011/09/02/business/global/us-solar-company-bankruptcies-a-boon-for-china.html.

- 3 -

22 of the '053 patent; and claims 1-13, 15-16, and 18-20 of the '054 patent. Dkt. no. 25, ¶¶ 9, 13, 17. All three patents will expire in 2015. Dkt. no. 50, ¶ 5.

The case was assigned to Hon. Edward J. Davila on April 25, 2011, and an initial case management conference was held on October 14, 2011. Dkt. nos. 19, 37. At the case management conference, based on the parties' joint request, the Court referred the parties to private mediation and did not set any deadlines, other than the parties' proposed deadline of December 9, 2011 to hold an initial mediation. *See* Dkt. no. 37. The parties stipulated that discovery would be stayed through January 9, 2012, with the exception of a small set of damages-related information that they agreed to exchange to further the mediation. *See* Dkt. no. 43.

Efforts to settle the case through mediation were not successful. On January 9, 2012, upon the expiration of the stipulated stay of discovery, the parties served their initial objections and responses to each others' first sets of interrogatories and document requests. No further documents were produced at that time or have been produced since. To date, Nanosolar has produced six documents and Solannex has produced 47 documents. Gratzinger Decl. ¶ 6. No depositions have been noticed or taken. No subpoenas have been served. The parties have not exchanged infringement contentions, invalidity contentions, or proposed claim constructions. *Id.* ¶ 7. This is the first contested motion to be filed. The Court has not issued a case management order, and thus no trial date or other case management deadlines have been set.

After private mediation did not result in a resolution of the case, Nanosolar increased its efforts to analyze the technical merits of the case, focusing still on the most cost-effective way in which to resolve it given the limited amount of money in dispute even if Solannex should prevail. Nanosolar determined that there is printed prior art that anticipates and invalidates every asserted claim of all three patents in suit, and promptly engaged counsel to prepare a reexamination request before the PTO. Those requests were filed on January 25, 2012, and courtesy copies were provided to Solannex by e-mail the same day. Gratzinger Decl. ¶ 2. Nanosolar has sought reexamination of every claim for which Solannex has alleged infringement. *Id.* ¶ 3.

### C. Overview of *Ex Parte* Reexamination Procedure

Once a reexamination request has been filed, the PTO is statutorily required to determine whether the request raises a "substantial new question of patentability," or "SNQ," within three months. 35 U.S.C. § 303(a). Thus, the parties should have an initial determination from the PTO no later than April 25, 2012. The PTO often makes its SNQ determination — known as the "reexamination order" if an SNQ is found, or the "denial" if not — slightly faster. Gratzinger Decl. Ex. C, at 1-2 (in 2011, average of 1.8 months to *ex parte* order and 1.9 months to *ex parte* denial). Reexamination orders are granted in 92% of *ex parte* reexaminations and denied in only 8%. Gratzinger Decl. Ex. D, at 1, item 5(a). Of those third-party-initiated requests in which *ex parte* reexamination is granted, 76% result in changes to or cancellation of patent claims. *Id.* at 2, items 8, 10(b).

The PTO's handling of reexamination has become faster in recent years. For instance, the average duration to the first action on the merits has fallen from over a year in 2007 and 2008 to less than six months in 2011. Gratzinger Decl. Ex. C (see references to "Average Months to Ex Parte FAOM"). Similarly, the average duration to the issuance of a reexamination certificate — the final event before any appeals — has fallen over the same period from 40 months to 21 months. *Id.* (see references to "Average Months to Ex Parte Certificate"). The PTO's internal procedures also provide that *ex parte* reexaminations of patents concurrently involved in litigation "will have priority over all other cases." *Manual of Patent Examination Procedure* § 2261, *available at* www.uspto.gov/web/offices/pac/mpep/index.htm. Accordingly, excluding any appeals, the reexaminations requested by Nanosolar are reasonably likely to conclude by October 2013.

### III. ARGUMENT

#### A. Neither a Trial Date Nor Other Case Management Deadlines Have Been Set, and Only Limited Discovery Has Occurred

Each of the factors that courts consider in determining whether to grant a stay pending reexamination strongly favors a stay in this case. The first of those factors is "whether discovery is complete and whether a trial date has been set." *AT&T*, 774 F. Supp. 2d at 1051.

- 5 -

1  "The early stage of a litigation weighs in favor of granting a stay pending reexamination." *Id.* at
2  1052 (citing *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023, 1995
3  WL 20470, at *2 (N.D. Cal. 1995)); *accord Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-
4  2168-EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011).  The absence of "'significant
5  discovery'" or "'substantial expense and time . . . invested in the litigation'" militates in favor of
6  a stay, *id.* (omission in original) (quoting *Target Therapeutics*, 33 U.S.P.Q.2d at 2023, 1995 WL
7  20470, at *2), as does the fact that the parties have "undertaken little or no discovery and the case
8  ha[s] not yet been set for trial," *id.* (citing *ASCII*, 844 F. Supp. at 1381).

9          This case is in its initial stages.  Although the case has now been pending for
10  approximately a year, and although the parties were permitted to begin discovery when they
11  conducted their Rule 26(f) conference on September 26, 2011, very little has actually occurred.
12  Solannex has done almost nothing to push the case forward.  Solannex did not move for a
13  preliminary injunction and has filed no other contested motion.  Solannex agreed to all but stay
14  discovery for more than two months, between October 27, 2011, and January 9, 2012, during
15  which time the parties held a one-day mediation.  *See* Dkt. no. 43.  Neither before nor after the
16  stipulated stay has Solannex served a single deposition notice or subpoena.

17          Solannex has served a single set of 38 requests for production, to which Nanosolar
18  responded on January 9, 2012, with objections and responses that included multiple requests to
19  meet and confer to determine an appropriate scope for production.  *See* Gratzinger Decl. Ex. B
20  (Responses to Request Nos. 9, 10, 37, 38).  Solannex has not taken Nanosolar up on the
21  suggestion to meet and confer; in fact, other than discussions surrounding the stipulated stay of
22  discovery pending mediation, there has been no discovery correspondence at all in this case.
23  Gratzinger Decl. ¶ 5.  The parties have not yet even agreed on the ground rules for electronic
24  discovery: Nanosolar seeks entry of the Federal Circuit Model Order on e-discovery in order to
25  hold down litigation costs; Solannex is opposed.  *See* Dkt. no. 50, at 6-7.  Thus far, Solannex has
26  produced 47 documents, almost all of which are copies of the patents and materials about
27  Nanosolar from the Internet; only two are internal Solannex documents.  Gratzinger Decl. ¶ 6.
28  Nanosolar has produced six documents.  *Id.*

1   The schedule that Solannex has asked the Court to enter is also instructive. *See* Dkt. no. 50, at 8-9. Despite the fact that it filed this case approximately a year ago and that discovery opened last September, Solannex asks for three extra weeks before it must serve its Infringement Contentions, from which numerous other case deadlines depend. *Id.* Solannex does not contemplate fact discovery closing until a year from now and does not seek a trial until October 2013. *Id.* As of today, no trial date has been set.

Numerous courts have found the stage-of-proceedings factor to weigh in favor of a stay in cases that had progressed significantly further than this case has. In *AT&T*, for example, the court granted a stay even though claim construction briefs had already been filed — an event that Solannex does not envision happening in this case until September of this year. *See AT&T*, 774 F. Supp. 2d at 1052; dkt. no. 50, at 8-9 (Solannex's proposed schedule). In *Pragmatus*, the court found this factor to weigh in favor of a stay even when the parties had already served infringement and invalidity contentions. *Pragmatus*, 2011 WL 4802958, at *2. Similarly, in *Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-2863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011), the court found that the stage-of-proceedings factor "weigh[ed] slightly in favor of staying the proceedings," even when "invalidity and infringement contentions had already been exchanged, claim construction discovery was complete," "the parties had completed a joint claim construction statement," "more than two million pages of documents ha[d] been produced," and "at least two depositions ha[d] been taken." *Id.* at *4. Here, with no Patent Local Rule disclosures having been exchanged, with claim construction proceedings many months away, with no depositions having taken place, and with document production having not progressed beyond a nominal level, the stage-of-proceedings factor weighs heavily in favor of a stay.

**B.  A Stay Is Likely to Simplify the Issues in This Case**

The second factor that courts consider is "whether a stay will simplify the issues in question and trial of the case." *AT&T*, 774 F. Supp. 2d at 1051. As described above, Nanosolar has requested reexamination of every claim that Solannex is asserting in this case — 55 claims in total. Since there are no other issues in this case, reexamination is highly likely to simplify the

1  proceedings. *See id.* at 1053 (*ex parte* reexamination would simplify the issues and trial in the
2  case when there were "no issues in the case unrelated to patent infringement for which the PTO's
3  expertise resulting from the reexamination would not be helpful").

4  The PTO, as noted above, grants the overwhelming majority of requests for *ex*
5  *parte* reexamination, and more than three-quarters of granted requests result in changes to or
6  cancellation of claims. *See Generac Power Sys. Inc. v. Kohler Co.*, --- F. Supp. 2d ----, 2011 WL
7  2648596, at *3 (E.D. Wis. July 5, 2011) (confirming that "76% of third party reexamination
8  requests that the PTO reexamines are modified, amended, or affected in some way"). Because
9  the requests for reexamination address all asserted claims, "the grant of a stay will maximize the
10 likelihood that neither the Court nor the parties expend their assets addressing invalid claims."
11 *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 WL 1134471, at *3
12 (S.D.N.Y. Aug. 10, 2000). Where, as here, the request for reexamination "includes all claims at
13 issue in th[e] litigation and there is a high statistical likelihood that reexamination will be granted
14 and the claims will either change or be canceled," the simplification-of-issues factor weighs in
15 favor of granting a stay. *Pragmatus*, 2011 WL 4802958, at *3.

16 **C.   A Stay Would Not Unduly Prejudice or Tactically Disadvantage Solannex**

17 The final factor that courts consider is "whether a stay would unduly prejudice or
18 present a clear tactical disadvantage to the non-moving party." *AT&T*, 774 F. Supp. 2d. at 1051.
19 There would be no such prejudice or disadvantage here. Solannex may complain of delay, but the
20 "'delay inherent in the reexamination process does not constitute, by itself, undue prejudice.'" *Id*.
21 at 1054 (quoting *Esco Corp. v. Berkeley Forge & Tool, Inc*., 2009 WL 3078463 at *3 (N.D. Cal.
22 Sept. 28, 2009)); *accord Pragmatus*, 2011 WL 4802958, at *3. Furthermore, Solannex has
23 previously agreed to all but stay discovery, and it has done very little to push this case forward,
24 suggesting that time is not of the essence to Solannex. *See Orinda Intellectual Props. USA*
25 *Holding Group, Inc. v. Sony Elecs. Corp.*, No. C 09-4920 EDL, 2010 WL 3184375, at *5 (N.D.
26 Cal. Aug. 11, 2010) ("It is unclear why [the patentee previously] agreed to such a lengthy stay of
27 the case . . . if such delay were prejudicial.").

28

- 8 -

Moreover, a stay will not prevent complete relief to Solannex in the event that the PTO does not cancel all of the asserted claims. While Solannex purports in its pleadings to be seeking injunctive relief, as a non-practicing entity, it has scant chance of obtaining one. A patent plaintiff seeking equitable relief has the burden of demonstrating "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

While not categorically ruling out injunctive relief for entities such as Solannex that do not make or sell any patented product, *eBay* effectively made such relief appropriate only in rare circumstances. *See id*. at 396-97 (Kennedy, J., concurring) (contrasting the relevant considerations in traditional patent infringement actions with those "in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees"). Following *eBay*, courts have routinely denied injunctive relief to patentees that do not practice their patents. *See, e.g.*, *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) (affirming denial of permanent injunction to entity that licenses but does not practice its patents); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006) (denying injunction despite patentee's allegation that it "made tremendous efforts to commercialize its invention prior to the suit and that its failure to succeed was partly due to Microsoft's infringement"); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 980-86 (N.D. Cal. 2009) (denying injunctive relief despite the fact that patent owner was competing for "design wins" for its patented interface standard).

Courts have recognized that a stay pending reexamination is particularly appropriate where there is little chance of injunctive relief. In *Pragmatus*, the patentee argued that it would be prejudiced by a stay because it would be unable to move for injunctive relief before its patents expired. *Pragmatus*, 2011 WL 4802958, at *3. The court rejected this argument, noting that "'[c]ourts have consistently found that a patent licensor cannot be

- 9 -

1  prejudiced by a stay because monetary damages provide adequate redress for infringement.'" *Id.*
2  at *4 (alteration in original) (quoting *Implicit Networks Inc. v. Advanced Micro Devices, Inc.*, No.
3  C 08-184 JLR, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009)). The court noted that the
4  patentee had "not yet moved for injunctive relief," and in light of its status as a non-practicing
5  entity, held that it had not shown any "plausible claim" to a future injunction. *Id.* Notably,
6  Solannex has not sought a preliminary injunction in this case.

7        Furthermore, even when parties are competitors, the party opposing the stay "must
8  provide more than conclusory arguments about the adverse impact" of the alleged infringement to
9  demonstrate undue prejudice. *See Generac*, --- F. Supp. 2d at ----, 2011 WL 2648596, at *5.
10 Thus, for example, speculative statements about potential, hoped-for future plans to compete with
11 Nanosolar (to the extent Solannex has any) would be far from an adequate reason to deny a stay.
12 *See id.*

13       Nanosolar has not delayed in seeking reexamination or filing this motion.
14 Nanosolar engaged reexamination counsel promptly after a Court-directed early mediation, which
15 was held on December 14, 2011, did not result in a settlement, and it filed the reexamination
16 requests as quickly as was practicable. Immediately upon filing the reexamination request on
17 January 25, 2012, Nanosolar asked Solannex to stipulate to stay the case pending the
18 reexaminations. Gratzinger Decl. ¶ 2. When Solannex informed Nanosolar on February 6, 2012,
19 that it would not stipulate to a stay, Nanosolar filed this motion. Because Nanosolar has been
20 diligent in seeking a stay and Solannex cannot demonstrate undue prejudice, this factor also
21 weighs in favor of a stay. *See, e.g.*, *AT&T*, 774 F. Supp. 2d. at 1054.

22 **IV.**   **CONCLUSION**

23       For the foregoing reasons, the Court should order the case stayed in its entirety
24 pending the final disposition of Nanosolar's requests for reexamination of the asserted patents, as
25 well as the related relief described in the accompanying proposed order.

26
27
28

| | | |
|---|---|---|
| 1 | DATED: February 6, 2012 | MUNGER, TOLLES & OLSON LLP |

By: */s/ Peter E. Gratzinger*
   Peter E. Gratzinger
   Attorneys for Defendant
   Nanosolar, Inc.